## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.** |
| | : | |
| | : | **VIOLATION:** |
| | : | |
| v. | : | **18 U.S. C. § 201(c)(1)(A)** |
| | : | **(Payment of a Gratuity to a Public** |
| | : | **Official)** |
| **MACOUMBA N'DIAYE,** | : | |
| | : | |
| **Defendant.** | : | |

## INFORMATION

The United States Attorney informs the Court that:

### Introduction

1.    Defendant **MACOUMBA N'DIAYE** was the owner of "Mac and Son's Plumbing and Heating," a company located in Washington, D.C., that purportedly specialized in expediting building permits and other critical approvals that impact building construction, renovations and occupancy.   In short, defendant **MACOUMBA N'DIAYE** was a "permit expediter."

### The D.C. Department of Consumer and Regulatory Affairs

2.    The District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), located at 1100 4th Street, SW, Washington, DC, was responsible for protecting the health, safety, economic interests, and quality of life of residents, businesses, and visitors in the District of Columbia by issuing licenses and permits, conducting inspections, enforcing building, housing, and safety codes, regulating land use and development, and providing consumer education and advocacy services.

3.      District of Columbia regulations required that all property owners obtain building permits from the DCRA for any property improvement projects, interior renovations, remodeling and repairs.  A building permit is an authorization to build according to a specific scope of work, including approved plans.   Any modification of permit scope or approved plans must be specifically approved.   Most property improvement projects required one or more of the following permits: (a) Building Permits; (b) Plumbing Permits (where applicable), (c) Electrical Permits (where applicable), and (d) Mechanical Permits (where applicable).  Only licensed D.C. contractors for the specific trade may apply for the heating, electrical and plumbing permits at the DCRA's Permit Center. Also, only the licensed professional contractors and expediters utilize DCRA's Permit Center.   Homeowners who are engaged in minor projects utilize the Homeowners Center that was designed to help homeowners get building permits for home improvement projects such as decks, fences, interior renovations and repairs, and window replacement.

4.      Before a permit was issued, the application was reviewed by a DCRA Official with knowledge of the disciplines for which the permit is sought (e.g. electrical, structural).  The permits insured that home improvement and construction projects were done safely and properly.

5.      In order for the DCRA to process a permit at the Permit Center, the contractors or expediters were required to bring four (4) sets of plans.  The plans were required to address all work on the application, including: (a) Existing and proposed architectural plans for all floors, (b) structural details, (c) plumbing details; (d) electrical details, and (e) mechanical details. If the building was new or the owner was building an exterior addition to the existing building, a DC Surveyor's plat showing the footprint of the proposed new building or addition, with all dimensions was required.  All plans were required to be drawn to scale, in ink, on paper no

2

smaller than 11 by 17 inches. Any permit issued became invalid if the authorized work did not start within one year after the permit was issued.

6.      Upon arrival at the DCRA's Permit Center, DCRA customers usually stopped to select a ticket to be assisted in the order in which they arrived. Thereafter, the completed permit applications were filled out, then a plans review coordinator and/or a field inspector carefully inspected and reviewed the proposed plans and work descriptions for compliance with D.C. Government codes and regulations. The permit review process was often tedious and time-consuming.

7.      Public Official No. 1, whose identity is known, was a Contact Representative at the DCRA's Permit Center. As a DCRA Contact Representative, Public Official No. 1's duties and responsibilities included: reviewing and processing of applications for various permits to assure that all required information was included in the applications. Upon approval of permit applications, Public Official No. 1 was required to input pertinent information electronically into the system for issuance of appropriate permits.

8.      Public Official No. 2, whose identity is known, was a Contact Representative at the DCRA's Permit Center. As a DCRA Contact Representative, Public Official No. 2's duties and responsibilities included: reviewing and processing of applications for various permits to assure that all required information was included in the applications. Upon approval of permit applications, Public Official No. 2 was required to input pertinent information electronically into the system for issuance of appropriate permits.

9.      Public Official No. 3, whose identity is known, was a Contact Representative at the DCRA's Permit Center. As a DCRA Contact Representative, Public Official No. 3's duties

and responsibilities included: reviewing and processing of applications for various permits to assure that all required information was included in the applications.  Upon approval of permit applications, Public Official No. 3 was required to input pertinent information electronically into the system for issuance of appropriate permits.

### Payment of Illegal Gratuities for Performance of Official Acts

10.     From in or about August 2010 through in or about May 2013, in a continuing course of conduct, defendant **MACOUMBA N'DIAYE**, routinely gave U.S. currency to Public Official No. 1, Public Official No. 2, and Public Official No. 3 for their assistance in facilitating the processing of permit applications and securing needed approvals for the issuance of DCRA permits.  The payments were usually about $20.00, but occasionally were as much as $500.

11.     As a result of defendant **MACOUMBA N'DIAYE** providing what he considered "lunch money" to Public Official No. 1, Public Official No. 2, and Public Official No. 3, unlike other DCRA customers, **MACOUMBA N'DIAYE** was able to expedite the permit application process, and was often able to pick up the processed permits faster than they otherwise would have been available to other DCRA customers.

### <u>COUNT ONE</u>
### (Payment of a Gratuity to a Public Official)

12.     Paragraphs one through eleven are re-alleged and incorporated by reference as if fully set forth herein.

13.     On or about December 20, 2012, in the District of Columbia, defendant **MACOUMBA N'DIAYE**, otherwise than as provided by law for the proper discharge of official

4

duties, gave Public Official No. 3 a check for $500.00 in exchange for assistance provided, or to

be provided, in processing and securing of DCRA permits.

**(Payment of a Gratuity to a Public Official, in violation of 18 U.S.C. § 201(c)(1)(A)).**

> VINCENT H. COHEN, JR.
> Acting United States Attorney
>
> By: _Michelle N Bradford_
> Michelle N. Bradford (D.C. Bar 491910)
> Lionel André (D.C. Bar No. 422534)
> Assistant United States Attorneys
> Fraud and Public Corruption Section
> 555 4th St., N.W., Room 5245
> Washington, D.C.  20530
> (202) 252-7803 (Bradford)
> (202) 252-7818 (Andre)
> Michelle.Bradford@usdoj.gov
> Lionel.Andre@usdoj.gov